| | |
|---|---|
| Gary Lee Brown, | C/A No. 4:18-cv-2138-JFA |
| Plaintiff, | |
| vs. | **ORDER** |
| Nurse Boatwright, LT., Chris Woodberry, Sgt. Smithy, Prvt. Godwin, Prvt. Brandon Davis, Director Chuck Page, | |
| Defendant. | |

## I.      INTRODUCTION

Plaintiff Gary Lee Brown, ("Plaintiff") a self-represented state prisoner, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), the case was referred to the Magistrate Judge for pretrial proceedings. After a period of discovery, Defendants Lt. Woodberry, Sgt. Smithy, Prvt. Godwin, Prvt. B. Davis, and Director Page ("these Defendants") moved for summary judgment on June 13, 2019. (ECF No. 89).

After receiving Plaintiff's memorandum opposing the motion (ECF No. 105), Defendants filed a motion to strike witness statements, medical records, and Plaintiff's affidavit which were all attached to his response to summary judgment. (ECF No. 107). After reviewing these submissions, the Magistrate Judge assigned to this action[1] prepared

---

[1] The Magistrate Judge's review is made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.).  The Magistrate Judge makes only a recommendation to this

a thorough Report and Recommendation ("Report"). (ECF No. 121). Within the Report, the Magistrate Judge opines that these Defendants' motion for summary judgment should be granted in all respects. The Report sets forth, in detail, the relevant facts and standards of law on this matter, and this Court incorporates those facts and standards without a recitation. Plaintiff filed objections to the Report on March 2, 2020. (ECF No. 133). Therefore, this matter is ripe for review.

## II.    LEGAL STANDARD

The court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1). However, a district court is only required to conduct a *de novo* review of the specific portions of the Magistrate Judge's Report to which an objection is made. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992). In the absence of specific objections to portions of the Report of the Magistrate, this court is not required to give an explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Thus, the court must only review those portions of the Report to which Petitioner has made a specific written objection. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005).

Court.  The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM Trucking of the Carolinas, LLC*, No. 0:15-cv-04009-JMC, 2017 WL 6345402, at \*5 n.6 (D.S.C. Dec. 12, 2017) (citing *One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). A specific objection to the Magistrate Judge's Report thus requires more than a reassertion of arguments from the complaint or a mere citation to legal authorities. *See Workman v. Perry*, No. 6:17-cv-00765-RBH, 2017 WL 4791150, at \*1 (D.S.C. Oct. 23, 2017). A specific objection must "direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

"Generally stated, nonspecific objections have the same effect as would a failure to object." *Staley v. Norton*, No. 9:07-0288-PMD, 2007 WL 821181, at \*1 (D.S.C. Mar. 2, 2007) (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)). The court reviews portions "not objected to—including those portions to which only 'general and conclusory' objections have been made—for *clear error*." *Id.* (emphasis added) (citing *Diamond*, 416 F.3d at 315; *Camby*, 718 F.2d at 200; *Orpiano*, 687 F.2d at 47).

The legal standard employed in a motion for summary judgment is well-settled and correctly stated within the Report. Accordingly, that standard is incorporated herein without a recitation.

## III. DISCUSSION

As stated above, the relevant facts and standards of law on this matter are incorporated from the Report. However, a brief recitation of the factual background is necessary to analyze the objections. Because Plaintiff is proceeding *pro se*, the Court is charged with liberally construing the pleadings to allow Plaintiff to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). Additionally, all facts and inferences to be drawn therefrom are viewed in the light most favorable to the Plaintiff. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991).

Plaintiff alleges that at all relevant times he was housed as a pretrial detainee at the Marion County Detention Center ("MCDC"). In the amended complaint, Plaintiff alleges that while housed at the MCDC, he was subjected to unlawful conditions of confinement, deliberate indifference to his serious medical needs, and negligence. (ECF No. 64). Specifically, Plaintiff asserts that he was electrocuted and burned while in a cell in "B" pod section of MCDC when he came in contact with unprotected wires when cleaning underneath the sink area on January 23, 2018. He also asserts that he was denied proper medical care after being electrocuted in his cell. Specifically, as to these Defendants, Plaintiff alleges that Lt. Woodberry, under the direction of Director Page, was in charge of the male population housing to include the "B" pod in the MCDC. Plaintiff alleges that the "B" pod had seven defective cells containing loose wires, and the Defendants all had personal knowledge of the defective cells from the complaints of inmates and the daily inspections of the cells. On or about January 15, 2018, Prvt. Godwin, Prvt. Davis, and Sgt

4

Smithy ordered the Plaintiff into defective cell B#5 and did not caution him about the wires or that the cell was a possible health hazard. Plaintiff also asserts that cells in pod "A" also had exposed wires, but that prison officials had placed covers over these wires to prevent electrocution.

Plaintiff was electrocuted around 6:30 p.m. and his cell mate, Emanual Warren, saw what happened and called Prvt. Davis to come help Plaintiff. Plaintiff was escorted to medical around 6:40 p.m. on January 23, 2018, by Prvt. Davis to be examined by Nurse Boatwright. Nurse Boatwright then had Prvt. Davis escort Plaintiff "up front for medical monitoring" where Plaintiff alleges he was placed in a holding cell to wait on transportation to the hospital for further evaluation and treatment.[2] Plaintiff alleges that he was blistered, dizzy, had chest pain, and had to "lay down because the pain inside his head felt like someone was beating with a hammer." (ECF No. 64, p. 11). When the 2nd shift officers arrived at MCDC, they were misinformed about his medical condition and thought he had been burned while trying to light a cigarette resulting in only minor injuries. Plaintiff complained to the officers that he was experiencing pain with his injuries being visible and obvious. Lt. Gerald informed Plaintiff that he was not going to the hospital for treatment for electrical burns, gave him two Tylenol, and Sgt. Alexander gave him several bandaids for his wounds instructing him that Nurse Boatwright would attend to his medical condition the next morning. Plaintiff alleges that he was left in the "Detox holding cell that has no sink, water, or toilet." (ECF No. 64, p. 12).

---

[2] Defendants have asserted that Plaintiff was placed in the holding cell for monitoring not for transportation to the hospital.

The next day, Plaintiff asserts that Lt. Woodberry ordered Nurse Boatwright not to follow-up on Plaintiff's medical condition. Lt. Woodberry cursed at the Plaintiff and accused him of playing with wires and interfered with his medical treatment by ordering Nurse Boatwright not to give him treatment as a form of punishment. Throughout the day on January 24, 2018, Plaintiff asserts that Lt. Woodberry continued to ignore his complaints of electrical burns on his right hand, neck, and inside his ear. Further, Woodberry had Prvt. Smith escort Plaintiff back to "B" pod placing him into another defective cell while having personal knowledge that the cells had active electricity in unprotected wires "because Plaintiff's accident flipped the breaker switch, and he cut the power back on." When the shift changed on January 24, 2018, Lt. Gerald checked on Plaintiff's medical condition and advised Plaintiff to complete a "Grievance of Inmate" form stating that she would personally deliver the grievance to the Director, Chuck Page. Nurse Boatwright conducted another medical examination with treatment on January 25, 2018 and referred Plaintiff to Nurse Practitioner Fling for further treatment.

Plaintiff asserts that he received treatment from medical but that "uncertified" officers regularly skipped his medication and/or interfered with his medication for which he filed another grievance through Lt. Gerald. Plaintiff alleges that his ten-day treatment ordered by "Dr. Fling" lasted two weeks because from February 15 through February 28, the officers were administering the wrong medication while Nurse Boatwright was fraudulently signing the medical log sheet as if he was receiving his medication properly and on time. Plaintiff was referred to Dr. McKay of Florence Ears, Nose, and Throat, PC who examined and treated Plaintiff with medication. Dr. McKay recommended an MRI

but MCDC refused to pay for the test. On May 25, 2018, Plaintiff filed a written complaint with DHEC including pictures of one of the defective cells and written complaints from other inmates. DHEC did an inspection on MCDC and found the facility did not meet state code standards and was in violation of health and safety regulations. On July 18, 2018, Marion County City Counsel held a meeting that was broadcast on a local television station about the failed DHEC inspection and the possible solutions for raising the estimated amount of "$2.1 million dollars for upgrades to bring the facility up to par." Plaintiff seeks $200,000 in compensatory damages and punitive damages.

Along with the motion for summary judgment, Defendants submitted Plaintiff's medical records and the affidavits of Lt. Woodberry, Sgt. Smithy, Prvt. Godwin, Prvt. Davis, and Director Page. (ECF Nos. 89-3 to 89-7). Each of these Defendants were employed by the Marion County Sheriff's Office at all relevant times. The Defendants "vehemently" deny that they have ever violated Plaintiff rights or engaged in any course of unlawful conduct intended to injure Plaintiff. (ECF Nos. 89-3 to 89-7). According to Defendants, on January 23, 2018, Pvt. Davis was performing room inspections at MCDC when Plaintiff called for him and informed Davis that he had been electrocuted while wiping down his sink. Prvt. Davis immediately called Cpl. Ceasar and Nurse Boatwright. Prvt. Davis then escorted Plaintiff to the nurse's office where she conducted a "full check-up." Nurse Boatwright asked that Plaintiff be housed in booking for overnight watch which was done. Plaintiff has been seen and treated by medical personnel on numerous occasions since the incident. Prior to being shocked, Defendants allege they were not aware of any dangerous condition in the Plaintiff's cell, including any live and exposed wires, and did

not know of or disregard any objectively serious condition, medical need, or risk of harm to the Plaintiff. Defendants attest that they were unaware that the wires at issue posed any shock hazard since they had not been previously provided notice of any exposed and live wires in the Plaintiff's cell. Defendants assert that it was their belief that the electricity had been turned off by Marion County maintenance personnel in response to inmates ripping out the night lights that the wires had been attached to. It appears that Defendants do not contest having knowledge of exposed wires in several cells. They only contest knowing that the wires were live or otherwise posed a risk of serious injury. Sometime after the incident pertaining to this action, the electricity to the wires at issue was turned off. Prior to the incident at issue, Plaintiff made no complaints about the alleged unlawful condition of the wires. As to medical care, these Defendants attest that they relied on the medical care providers.

## A. <u>**Deliberate Indifference to a Serious Medical Need**</u>

The Report recommends granting Defendants' motion for summary judgment as to Plaintiff's claim for deliberate indifference as to his serious medical need. In order to make a prima facie claim of deliberate indifference under § 1983, Plaintiff must allege "that the defendants actually knew of and disregarded a substantial risk of serious injury to [him] or that they actually knew of and ignored [his] serious need for medical care." *Young v. City of Mount Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001). Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).

Each of these named Defendants, Woodberry, Smithy, Godwin, Davis, and Page are non-medical prison personnel. To state a claim of denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.* Further, negligence, in general, is not actionable under 42 U.S.C. § 1983. *See Daniels v. Williams,* 474 U.S. 327, 328-36 & n. 3 (1986). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee a prisoner the treatment of his choice. *Jackson v. Fair*, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D.Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. *See Smart v. Villar*, 547 F. 2d 112 (10th Cir. 1976); *Lamb v. Maschner*, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. *Russell v. Sheffer*, 528 F. 2d 318, 319 (4th Cir. 1975).

In the case of E*stelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain." *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976)). The Court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met…We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

*Estelle*, 429 U.S. at 103-105 (citations and footnotes omitted).

Here, the Magistrate Judge concluded that "Plaintiff's allegations that he was not properly or timely medicated at times fail to state a constitutional claim as there is no evidence that the named officials were personally involved with any denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct." (ECF No. 121, p. 14).

Plaintiff's objections on this point are sparse and difficult to decipher. (ECF No. 133, p. 7–8). However, this portion of the Report will be reviewed *de novo* nonetheless. As to these Defendants[3], Plaintiff's sole contention of medical indifference[4] stems from his

---

[3] Plaintiff makes allegations that "uncertified correctional officers at MCDC did not follow the Physician Order" to administer medicine. (ECF No. 64, p. 14). Because Plaintiff fails to identify which specific officer did not follow orders, these allegations cannot be used to support a claim against any of these named Defendants.

[4] All other claims for medical indifference appear to be directed at Nurse Boatwright, whose claims are addressed in a separate order.

allegation that after he was initially seen by Nurse Boatwright, "Defendant Lt. Woodberry, a non-medical official intentionally denied Nurse Boatwright from providing proper care. I heard him tell her not to go anyway near me while I was in the detox cell. This delayed my access to treatment. . . ." (ECF No. 105-3, p. 4)[5]. Assuming that this statement is true, Plaintiff has still failed to show a viable claim for medical indifference as to any of these Defendants. To be sure, prison officials can be held liable for medical indifference when "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 103-105. Here however, Defendant Woodberry's comments, if true, still did not show acts or omissions sufficiently harmful to evidence deliberate indifference to a serious medical need.

Plaintiff admits that he was promptly escorted to Nurse Boatwright for medical attention approximately 10 minutes after electrocution. Moreover, Nurse Boatwright immediately examined Plaintiff and he was given medication for pain and bandages. (*See* ECF No. 105-2, p. 4, "I came to you within minutes of being burned and all you gave me were Tylenol."). Furthermore, Plaintiff was seen again by Nurse Boatwright in less than 48 hours for a follow up visit after continued complaints of pain.[6] From there, Plaintiff received a series of other medical examinations and treatments by various medical

---

[5] Although the Report states that Plaintiff failed "to present evidence to support this factual assertion consistent with Rule 56, F.R.Civ. P.", Plaintiff asserts in his objection that he submitted a declaration containing personal knowledge as evidence. (ECF No. 133, p. 8). A review of the record indicates that the above quote appears in a properly submitted affidavit attached to Plaintiff's memorandum in opposition to the motion for summary judgment. (ECF No. 105-3). Accordingly, the Report is overruled on this evidentiary point.

[6] Plaintiff's own records state that he did not show other symptoms, such as blistering, until sometime after this initial visit. (*See* ECF No. 105-2, p. 4, "Hours later I blistered up behind my ear.").

providers. It is unclear what other medical treatment Plaintiff desired at that point in time as he also admits that "it took three (3) weeks for treatment to begin for burned membranes inside my right ear called fishers. This was because on [Dr. Fling's] initial visit I was too swollen at the right ear to conduct an examination." (ECF No. 105-3, p. 4–5). Accordingly, Plaintiff admits that any discovery of further medical needs was impossible until his second visit with Dr. Fling which occurred well after Plaintiff's initial visit with Nurse Boatwright.

Based on the above, Plaintiff has failed to show that Defendant Woodberry delayed access to necessary medical care or interfered with treatment once prescribed. Here, it appears that Plaintiff merely disagrees with the type and amount of medical treatment given.[7] Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D.Ga. 1994). Accordingly, the Report is adopted as to this claim and Defendants' motion for summary judgment is granted as to Plaintiff's claims for medical indifference.

### B. Conditions of Confinement

The Report recommends granting Defendants' motion for summary judgment as to Plaintiff's claims regarding the conditions of his confinement – namely the fact that he was electrocuted in his cell by loose electrical wires. The Magistrate Judge concludes that "there is no indication that any of the named Defendants had knowledge that there was any shock hazard with respect to the wires in Plaintiff's cell." (ECF No. 121, p. 17).

---

[7] Plaintiff admits as much as he states, "Plaintiff is not addressing the issue of giving the Plaintiff medical treatment. The issue is when it was given and the improper amount given." (ECF No. 134, p. 7).

In response to this conclusion, Plaintiff states that there is no question about the safety of his cell and "no prisoner should have been not only in that cell the Plaintiff was housed, but in the entire 'B' Pod." (ECF No. 133, p. 1).

Confinement conditions of pretrial detainees are to be evaluated under the due process clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. *Bell v. Wolfish*, 441 U.S. 520, 537, n. 16 (1979). To prevail on a conditions of confinement claim, a pretrial detainee must show either (1) an expressed intent to punish, or (2) lack of a reasonable relationship to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992) (citing *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988)). Prison officials act with the requisite culpable intent when they act with deliberate indifference to the inmates' suffering. *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir.) (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)), as amended, 75 F.3d 448 (9th Cir.). The test for whether a prison official acts with deliberate indifference is a subjective one: the official must "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)(internal citations omitted). "A plaintiff can make a prima facie case under this standard by showing that a

substantial risk of serious harm was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it. *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (internal quotations and citations omitted).

The Magistrate Judge concluded that "Defendants aver that they were unaware that the wires at issue posed a shock hazard to the Plaintiff and no evidence has been presented that these Defendants had been previously notified of any exposed live wires in Plaintiff's cell and disregarded this fact." (ECF No. 121, p. 16). Defendants attest that they believed the electricity had been turned off by Marion County maintenance personnel due to inmates ripping out the night lights and the wires attached to them.

In response to this contention, Plaintiff has set forth several evidentiary exhibits in an effort to show that Defendants were aware of the substantial risk posed by these live wires and their deliberate indifference thereto. Initially, Plaintiff points to a Policies and Procedure Manual which requires prison officials to conduct daily inspections of the cells and note any unusual conditions. (ECF No. 105-1, p. 2–3). This shows that Defendants were aware that Plaintiff's cell, and others in the same pod, contained loose electrical wires. Defendants do not contest the fact that they were aware of exposed wires in the cells. Moreover, Plaintiff alleges that "A" pod cells had covers over their loose wires "because [Defendants] did not want a prisoner to access those live wires." (ECF No. 133, p. 7). Plaintiff avers that "this verifies [Defendants] did know the danger." *Id*. This Court is inclined to agree that a reasonable juror could infer such a conclusion.

Moreover, Plaintiff produced an email in which Defendant Page stated:

> chris [Defendant Woodberry] said he called Robert several times last week to come check some wires in b-5 cell[.] chris said Robert told him that there wasnt any power on those wires[.] well inmate brown was in that cell and touched the wires and it tripped the breaker and the inmate got burnt from those wires[.] chris said he told Robert what had happened[.] Robert has not been to check them[.] chris flipped the breaker back on because the lights were out[.] can you please check this for me[.]

(ECF No. 105-1, p. 13)(written as it appears in the original).

The Magistrate Judge construed this email as conclusive evidence that Defendants had no knowledge the loose wires posed any shock hazard. However, when construed in the light most favorable to the Plaintiff, the email appears to show that Defendants had concerns about safety as they called "several times . . . to come check some wires." Additionally, Defendant Woodberry flipped the breaker back on because the lights were out after Plaintiff's shock tripped the breaker. Plaintiff alleges that this suggests Defendants were aware that the exposed wires were connected to active lights in the cells and therefore live with electricity. Moreover, Plaintiff avers he was placed back into that cell pod under the same conditions after Defendant Woodberry flipped the breaker back on in a further act of deliberate indifference.

Furthermore, Plaintiff submitted "testimonies of inmates who experienced similar scares in B-Pod." (ECF No. 105-1, p. 14–15). Within these statements, several detainees recount their experiences with live uncovered wires in their cells prior to Plaintiff's incident. *Id.* Moreover, several of these experiences were reported to prison officials prior

to Plaintiff's incident. *Id.* Accepting these statements as true[8] Plaintiff has shown that Defendants were aware of the serious risk caused by exposure to live electrical wires.

Defendants contest the use of these statements and aver that they should be stricken as they were neither sworn under oath nor made under the penalty of perjury.[9] (ECF No. 107). The Court notes that Plaintiff's submission contains two pages of seven inmate testimonials followed by a statement from Plaintiff himself. Each testimonial is signed and dated individually. At the bottom of the document appears the words "Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the forgoing is true and correct." (ECF No. 105-1, p. 14–15). Defendants contend that this final sentence is applicable only to Plaintiff's statement and not the preceding signed testimonials. Therefore, the testimonials are not proper witness statements. Because Plaintiff is proceeding *pro se* and all of his pleadings must be construed liberally, this Court declines to take such a strict approach to the admissibility of these statements at this stage in the proceedings. Accordingly, for purposes of this motion, this Court will consider these "testimonials" as proper unsworn declarations. Thus, Defendants' motion to strike is denied in this regard.

Defendants alternatively assert that these testimonials contain inadmissible hearsay such as prison officers responded that "it be ok" after being told a detainee was shocked. However, it appears that these statements are not being offered for the truth of the matter asserted, but rather to show prison officials were on notice of a potentially dangerous risk

---

[8] The plaintiff is entitled to have the credibility of all his evidence presumed at this stage. *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir. 1990).

[9] Pursuant to 28 U.S.C. § 1746, an unsworn statement is admissible at the summary judgment stage if the witness certifies that the unsworn statement is "true under penalty of perjury."

posed by loose wires. Accordingly, they do not contain inadmissible hearsay. *See United States v. Cone,* 714 F.3d 197, 219 (4th Cir.2013) (allowing emails to be admitted for the non-hearsay purpose of showing that the defendants were on notice regarding the type of goods being sold).

Additionally, the Magistrate Judge concluded that even if these statements were admissible, they "fail to create an issue of fact as to knowledge of the named Defendants of a risk of harm to the Plaintiff." (ECF No. 121, n. 10). However, as stated above, a plaintiff can make a prima facie case of the actual knowledge required for deliberate indifference by showing "that a substantial risk of serious harm was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it ..." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004). When considering the facts that (1) Defendants were well-aware that several cells in "B" pod had exposed loose wires; (2) covers had been placed over similar loose wires in "A" pod; (3) numerous detainees reported live wires in their cells to prison officials prior to Plaintiff's incident; and (4) several calls were made to maintenance officials to "come check some wires" in Plaintiff's cell the week prior to Plaintiff's injury, a reasonable jury could infer from these facts that these Defendants had knowledge of a high risk of electrocution from loose wires and chose to subject Plaintiff to this condition nonetheless.

Accordingly, Defendants' motion for summary judgment must be denied. Thus, the Court declines to adopt the Report as to this claim.

## C. **Supervisory Liability**

In the Report, the Magistrate Judge concludes that "Defendants cannot be held liable in his/her individual capacity under a theory of supervisory liability because there is no doctrine of respondeat superior in §1983 claims." (ECF No. 121 p. 18.) However, as the Plaintiff acknowledges, this type of liability is not premised upon respondeat superior, but on "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (quoting *Slakan v. Porter,* 737 F.2d 368 (4th Cir. 1984)).

To establish a claim for supervisory liability under §1983, the plaintiff must show: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). "A plaintiff may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Here, Plaintiff has alleged that each Defendant had knowledge of live exposed wires in multiple cells. Plaintiff asserts that this condition existed in at least 7 cells in "B" pod. (ECF No. 105-3). Moreover, Plaintiff alleges that similar conditions existed in "A" pod,

but those conditions were remedied by a cover placed over the loose wires. (ECF No. 105-3). Additionally, Plaintiff has submitted statements from numerous other inmates complaining of loose wires and errant electrocution to prison officials. (ECF No. 105-1, p. 14–15). Plaintiff also submitted manuals which mandate prison officials are to inspect each cell daily to check for dangerous conditions and therefore Defendants were well aware of the conditions within each of these cells. (ECF No. 105-1, p. 2–3). Accordingly, Plaintiff has presented a genuine issue as to whether prison officials such as Page and Woodberry knew of the pervasive risks caused by live exposed wires and nonetheless allowed their subordinates to expose prisoners to such conditions.

Moreover, Plaintiff alleges that his electrocution tripped a breaker which in turn turned off several lights. In response, Woodberry turned the power back on and then placed Plaintiff back in the very same cell pod without taking any action as to the wires. (ECF No. 105-1, p. 13). This is shown in the above email wherein Defendant Page indicated he and Woodberry knew of the exposed wires and had asked maintenance to "come check some wires in b-5 cell" prior to Plaintiff's incident. (ECF No. 105-1, p. 13).

Thus, construing this evidence in the light most favorable to Plaintiff, he has shown that Defendants Page and Woodberry had actual or constructive knowledge of the fact that subordinates were repeatedly placing detainees in cells with live wires which constituted an unreasonable risk. Moreover, the failure to place covers over wires in "B" pod could be seen as deliberate indifference. Accordingly, the Defendants' motion for summary judgment must be denied as to this claim. Therefore, the Court declines to adopt the Report in regard to this claim.

**D. Eleventh Amendment Immunity**

The Magistrate Judge concludes that these Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities. Plaintiff appears to concede this point and states that he "has not proceeded in this suit suing the defendants in their official capacity." (ECF No. 133, p. 10). "It is in their 'INDIVIDUAL CAPACITY' he is holding them liable." *Id.* Accordingly, this portion of the Report is adopted without objection.

**E. Qualified Immunity**

The Report also recommends that these Defendants are entitled to qualified immunity because "Defendants did not transgress any statutory or constitutional rights of Plaintiff of which they were aware in the exercise of their respective professional judgments." (ECF No. 121, p. 22). However, as stated above, when viewed in the light most favorable to the Plaintiff, a reasonable jury could conclude that Defendants had knowledge of the serious risk of injury posed by live unprotected electrical wires and nonetheless exposed Plaintiff to such a condition.

Moreover, the right to be free from serious injury while in custody was a clearly established right at the time of this incident. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994). Accordingly, these Defendants are not entitled to qualified immunity as to those claims relating to conditions of confinement.

**F. Supplemental Jurisdiction**

Based on the prior recommendation to dismiss all claims establishing federal question jurisdiction, the Report also recommends dismissal of any remaining claims if

"Plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory." Plaintiff appears to concede that he is not asserting any claims arising under state law. Indeed, he states that he is "not suing in state court in a tort, and have no desire to do so." (ECF No. 105, p. 21). "This is a § 1983 civil suit in the U.S. District Court." *Id.* Additionally, he states that "the Plaintiff complaint has been excepted for federal jurisdiction because the Plaintiff's substantive due process right has been violated and because of this constitutional violation by the Defendants, the Plaintiff is entitled to forgo state court procedures." *Id.* at 22. Accordingly, it appears Plaintiff has clarified that he is only asserting claims pursuant to §1983 – namely deliberate indifference to a serious medical need and claims challenging the conditions of confinement in violation of his 14th amendment rights as a pretrial detainee. Consequently, any argument as to the dismissal of any related or pendant state law claims is moot. However, this Court does agree with Defendants' initial argument asserted in the motion for summary judgment that to the extent the Amended Complaint can be construed to allege any claims under state law, Plaintiff has failed to present evidence that would support such a claim. Thus, Defendants motion for summary judgment should be granted to the extent any claims were alleged.

G. **Interference with Grievance Procedure**

As the Magistrate Judge correctly concluded "[a]s to any allegations involving the grievance procedure, the claim fails as there is no constitutional right to participate in grievance proceedings. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994)." (ECF No. 121, n. 2). Plaintiff does not object to this conclusion, and it is therefore adopted.

## H. **Improper Service**

Defendants also assert that this action is subject to summary dismissal for insufficiency of service of process pursuant Rules 12(b)(2), (4), and (5) of the Federal Rules of Civil Procedure. Defendants argue that Plaintiff failed to effect proper service upon Lt. Woodberry, Sgt. Smithy, Prvt. Godwin and Prvt. B. Davis as they were never personally served with a copy of the Summons and Complaint in this case. The Magistrate Judge failed to rule on this argument, presumably because Plaintiff's claims were dismissed on other more substantive grounds, and Defendants offered no objection to this declination within the Report.

Although, the Defendants raise this defense generally in their answer filed 3 months prior to their motion for summary judgment, the Defendants have otherwise failed to develop this claim in a timely fashion. Therefore, this Court finds this argument has been waived.[10] *See Patterson v. Whitlock*, 392 F. App'x 185, 193 (4th Cir. 2010) ("Thus, even where a defendant generally raises a service of process contention in its answer, that contention will be deemed waived if the defendant fails to adequately develop it in a reasonably prompt manner."); *Datskow v. Teledyne, Inc.,* 899 F.2d 1298, 1303 (2d

---

[10] Even if this claim were not deemed to be waived, this Court would allow Plaintiff additional time to properly effectuate service for good cause shown and thereby deny this motion to dismiss. *See* Fed. R. Civ. P. 4(m). However, these Defendants have all appeared, filed answers, engaged in discovery and have had their interest protected by an attorney at every stage in litigation. Accordingly, any further measure to effectuate service just to have Defendants re-file their answers would be superfluous at this point.

Cir.1990) (concluding that defendant waived defective service defense by stating it in answer, but not developing it until motion to dismiss filed four months later).

**I. <u>Motion to Strike</u>**

As stated above, Defendants' motion to strike as to the "testimonial" witness statements is denied. Additionally, Defendants seek to strike some of Plaintiff's medical records and Plaintiff's affidavit submitted along with his opposition to the motion for summary judgment. (ECF No. 107).

Initially, the medical records Defendants seek to strike are duplicates of those records submitted and relied on by Defendants in their motion for summary judgment. (*Compare* ECF No. 89-10 *with* ECF No. 105-2). Accordingly, these documents would remain in evidence even if Plaintiff's copies were stricken. Thus, this motion is without merit and denied.

Defendants also seek to strike Plaintiff's own affidavit (ECF No. 105-3) as it "is not based on the Plaintiff's personal knowledge and contains allegations upon which the Plaintiff is not competent to testify." (ECF No. 107). Defendants appear to take issue with Plaintiff's statements which are prefaced with "upon information and belief" and those which contain conclusions of law.

Plaintiff's use of "upon information and belief" does not render his statements void *per se* and to the extent his affidavit can be read to state information based upon his person knowledge, this Court is constrained to do so. Also, to the extent that some of these

statements constitute conclusions of law[11], they are unnecessary for use in this motion. Accordingly, there is no need to strike Plaintiff's affidavit and the motion to strike is denied.

## IV.    CONCLUSION

After carefully reviewing the applicable laws, the record in this case, the Report and Recommendation, and the objections thereto, this Court finds the Magistrate Judge's recommendation fairly and accurately summarizes the facts and applies the correct principles of law in most respects. Accordingly, the Court adopts the Report in all regards except for the recommendation that Plaintiff's claim regarding the conditions of his confinement and supervisor liability, both of which stem from Plaintiff's electrocution, be dismissed. Therefore, the Report is modified as discussed above. Thus, Defendants' motion for summary judgment (ECF No. 89) is granted as to all of Plaintiff's causes of action other than those § 1983 claims resulting from conditions of his confinement and supervisor liability.

This case will be set for trial in the July/August term of court. Jury selection is set for July 7, 2020.

The parties should come prepared to engage in mediation before a Magistrate Judge immediately after jury selection.

---

[11] As an aside, it appears that several of the Defendants' statements within their own affidavits contain similar conclusions of law. (*See i.e.* ECF No. 89-3; -4; -5; -6;-7) ("All of the acts, conduct, and/or omissions complained of by the Plaintiff were lawful and constitutional.").

Plaintiff and Defendants are ordered to come to jury selection with a complete list of all witnesses they intend to examine at trial complete with their full names and addresses, as well as copies of all exhibits they intend to introduce at trial. Failure to comply with this directive (which is required by the Local Rules for the district) will result in the forfeiture of the right to produce evidence (documents and/or witnesses) not disclosed at jury selection.

IT IS SO ORDERED.

March 23, 2020
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge