IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Gary Lee Brown,<br><br>                       Plaintiff,<br><br>vs.<br><br>Nurse Boatwright, LT., Chris Woodberry, Sgt. Smithy, Prvt. Godwin, Prvt. Brandon Davis, Director Chuck Page,<br><br>                       Defendant. | C/A No. 4:18-cv-2138-JFA-TER<br><br><br>**ORDER** |

## I. INTRODUCTION

Plaintiff Gary Lee Brown, ("Plaintiff") a self-represented state prisoner, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), the case was referred to the Magistrate Judge for pretrial proceedings. After a period of discovery, Defendant Nurse Boatwright ("Defendant" or "Boatwright") moved for summary judgment on June 17, 2019. (ECF No. 92).

After receiving Plaintiff's memorandum opposing the motion (ECF No. 105), Defendant filed a reply brief. (ECF No. 106). Thereafter, Plaintiff filed a sur-reply[1] (ECF No. 113) and Defendant moved to strike the sur-reply. (ECF No. 114). After reviewing

---

[1] Within the sur-reply, Plaintiff alleged that he did not receive a copy of Boatwright's individual motion for summary judgment but included arguments as to her actions in response to other named defendants' motion. He then set forth arguments in opposition to Boatwright's motion specifically.

these submissions, the Magistrate Judge assigned to this action[2] prepared a thorough Report and Recommendation ("Report"). (ECF No. 123). Within the Report, the Magistrate Judge opines that Defendant's motion for summary judgment should be granted in all respects. The Report sets forth, in detail, the relevant facts and standards of law on this matter, and this Court incorporates those facts and standards without a recitation. Plaintiff filed objections to the Report on March 2, 2020 (ECF No. 134) to which Defendant filed a response. (ECF No. 137). Therefore, this matter is ripe for review.

## II. LEGAL STANDARD

The court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1). However, a district court is only required to conduct a *de novo* review of the specific portions of the Magistrate Judge's Report to which an objection is made. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992). In the absence of specific objections to portions of the Report of the Magistrate, this court is not required to give an explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Thus, the court must only review those portions of the

---

[2] The Magistrate Judge's review is made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.). The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976).

Report to which Petitioner has made a specific written objection. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM Trucking of the Carolinas, LLC*, No. 0:15-cv-04009-JMC, 2017 WL 6345402, at *5 n.6 (D.S.C. Dec. 12, 2017) (citing *One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). A specific objection to the Magistrate Judge's Report thus requires more than a reassertion of arguments from the complaint or a mere citation to legal authorities. *See Workman v. Perry*, No. 6:17-cv-00765-RBH, 2017 WL 4791150, at *1 (D.S.C. Oct. 23, 2017). A specific objection must "direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

"Generally stated, nonspecific objections have the same effect as would a failure to object." *Staley v. Norton*, No. 9:07-0288-PMD, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)). The court reviews portions "not objected to—including those portions to which only 'general and conclusory' objections have been made—for *clear error*." *Id.* (emphasis added) (citing *Diamond*, 416 F.3d at 315; *Camby*, 718 F.2d at 200; *Orpiano*, 687 F.2d at 47).

The legal standard employed in a motion for summary judgment is well-settled and correctly stated within the Report. Accordingly, that standard is incorporated herein without a recitation.

## III. DISCUSSION

As stated above, the relevant facts and standards of law on this matter are incorporated from the Report. However, a brief recitation of the factual background is necessary to analyze the objections. Because Plaintiff is proceeding *pro se*, the Court is charged with liberally construing the pleadings to allow Plaintiff to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). Additionally, all facts and inferences to be drawn therefrom are viewed in the light most favorable to the Plaintiff. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991).

Plaintiff alleges that at all relevant times he was housed as a pretrial detainee at the Marion County Detention Center ("MCDC"). In the amended complaint, Plaintiff alleges that while housed at the MCDC, he was subjected to unlawful conditions of confinement, deliberate indifference to his serious medical needs, and negligence. (ECF No. 64). Specifically, Plaintiff asserts that he was electrocuted when he came in contact with unprotected wires in his cell on January 23, 2018. He also asserts that he was denied proper medical care after being electrocuted in his cell.

Specifically, as to Boatwright, Plaintiff alleges the following, quoted verbatim:

> Defendant Nurse Boatwright is the medical care provider at "MCDC." The Defendant showed deliberate indifference to the Plaintiff's serious medical needs when she failed to respond appropriately to his serious medical condition. Nurse Boatwright knew that the Plaintiff was injured during an electrocution accident and denied him adequate medical treatment which constituted cruel and unusual punishment under the Eighth Amendment of the United States Constitution.

> Nurse Boatwright was negligent because she interfered with medical treatment Dr. Fling[3] (Southern Health Partners, Inc.) Ordered. The Defendants fraudgently (sic) signed medical log-sheets, and falsified another medical document that cause the Plaintiff's unnecessary and wanton infliction of pain to be extended further. Nurse Boatwright's actions violated the Plaintiff's rights under the Eighth Amendment to the United States Constitution.

(ECF No. 64, p. 8).

In his amended complaint, Plaintiff alleges that the accident happened at or around 6:30 p.m. on January 23, 2018, and he was escorted to medical around 6:40 p.m. to be seen by Nurse Boatwright. Plaintiff states that "Nurse Boatwright was on her way home, but she came back and did a brief inspection on the Plaintiff." *Id*. at 11. After Nurse Boatwright's "inspection," she had Defendant Davis escort Plaintiff up front for medical monitoring. Defendant Boatwright's first "inspection" was negligent because she did not report any bruising or physical injury on the clinical data form. Plaintiff alleges that Nurse Boatwright did not check on him the next day and refused to answer his complaints for medical treatment. Plaintiff asserts that Defendant Boatwright's first time realizing the Plaintiff's serious medical condition and noticing his injuries was two days after the accident, January 25, 2018, at which time Nurse Boatwright saw him on sick-call visit where she cleaned and dressed his burns and referred him to the medical supervisor, NP Fling. On January 26, 2018, NP Fling examined Plaintiff and prescribed antibiotics, burn cream, and pain medication but Plaintiff alleges NP Fling could not examine his ear due to it being too swollen. Plaintiff asserts that Defendant Boatwright completed the clinical

---

[3] Plaintiff refers to Nurse Practitioner Kendra Fling as "Dr. Fling". Fling will be correctly referred to as NP Fling in this Report and Recommendation.

pathway/clinical data form acknowledging Plaintiff's electrical burns, and he was put on wound care. Plaintiff then notified Nurse Boatwright on five electronic grievances that the treatment plan NP Fling put him on was not working with the discomfort and ringing in his ear which was causing sleep deprivation. On February 9, 2018, NP Fling returned to MCDC to visit the Plaintiff for his serious medical condition finding the cause of pain and discomfort was coming from a burn on the inside of his ear concluding the electricity exited Plaintiff's body through his right hear causing constant ringing and hearing loss. NP Fling prescribed an eardrop to be administered three times a day for ten days, and Plaintiff was to start therapy with an ear specialist for hearing loss. NP Fling's order for ten days of treatment lasted for over two weeks because officers issued the medicine incorrectly from February 15, 2018, until February 28, 2018. Plaintiff asserts that Defendant Boatwright falsified his medical log sheet showing he was receiving the proper medication on time when he was not. When he was transferred to Marlboro County Detention Center Nurse Boatwright was contacted, and the mistake was corrected. Plaintiff began treatment with Dr. McKay at Florence Ears, Nose and Throat on March 26, 2018, where he was placed on prednisone to attempt to restore some of the "sensorineural hearing loss" in his right ear. On April 26, 2018, Dr. McKay discussed performing an MRI with Plaintiff. Defendants allege that Plaintiff refused the MRI, but Plaintiff avers that Defendant Page refused to pay for the MRI.

Along with the motion for summary judgment, Defendant Boatwright submitted the affidavit of NP Fling. (ECF No. 92-1). Fling attests that she works for Southern Health Partners, providing medical services for the MCDC. While Plaintiff alleges that Nurse

Boatwright was deliberately indifferent to his medical needs after he was electrocuted and complained of injuries including burns on his fingers, blisters on his fingers, burns under his right ear, dizziness, chest pains, and constant ringing in the ears, Fling avers that the medical records establish that Plaintiff received medical care in response to all of his complaints. On January 23, 2018, Plaintiff was seen by medical in response to his complaints of an electric shock. Nurse Boatwright assessed his vitals and ordered Plaintiff to be placed in booking for medical monitoring, and he was prescribed 500 mg of Tylenol. Plaintiff admits that he was seen by medical within minutes of being burned and admitted he received Tylenol. On January 25, 2018, Plaintiff was again seen by medical in response to his complaints. In addition to assessing Plaintiff and taking his vitals, Nurse Boatwright placed Plaintiff on the Nurse Practitioner call list and placed him on wound care. NP Fling assessed Plaintiff in response to his complaints of ear pain and burns. Plaintiff was seen for follow-up on February 1, 2018, whereby Nurse Boatwright assessed his vitals and noted his wounds were healing. NP Fling asserts that Plaintiff admitted on February 7, 2018, that he received treatment by Fling and admits he took his prescribed medication. Plaintiff was prescribed an antibiotic, Neomycin-Polm-Dexameth, used to treat bacterial infections. On February 21, 2018, in response to his complaints of sleep disturbance, the medical staff performed a mental health survey of Plaintiff and prescribed Cortisporin, an inflammatory steroid used to treat ear infections, and took his vitals. On March 2, 2018, Plaintiff was seen by medical in response to complaints and NP Fling referred Plaintiff to an ear, nose, and throat physician.

Plaintiff was seen by Florence Ears, Nose, and Throat, PC on March 26, 2018, and April 26, 2018. At the April 26 visit, Dr. McKay discussed an MRI to be the appropriate exam for diagnosis, but the notes reveal Plaintiff did not want an MRI performed. NP Fling asserts that Nurse Boatwright provided the appropriate level of medical care and treatment to Plaintiff and Nurse Boatwright did not refuse to provide medical care or treatment and responded to all of the patient's requests with the appropriate level of care and treatment under the circumstances. Moreover, Nurse Boatwright does not have the authority to order any medical care for an inmate but had the authority to carry out a treating physician's orders or a nurse practitioner's order directed to a nurse. The medical staff at the MCDC, including Nurse Boatwright, does not dispense medication to pre-trial detainees and inmates which is dispensed by the MCDC officers.

A. **<u>Deliberate Indifference to a Serious Medical Need</u>**

The Report recommends granting Defendant's motion for summary judgment as to Plaintiff's claim for deliberate indifference as to his serious medical need. In order to make a prima facie claim of deliberate indifference under § 1983, Plaintiff must allege "that the defendants actually knew of and disregarded a substantial risk of serious injury to [him] or that they actually knew of and ignored [his] serious need for medical care." *Young v. City of Mount Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001).[4] Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to

---

[4] The standard for reviewing medical claims of pretrial detainees under the Fourteenth Amendment is essentially the same as that for a convicted prisoner under the Eighth Amendment-deliberate indifference to serious medical needs. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir.1992).

those needs of which he was aware at the time, a plaintiff may not prevail. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve,* 535 F.3d 225, 241 (4th Cir.2008). The deliberate indifference prong is met where an officer "knows of and disregards the risk posed by the serious medical needs of the inmate." *Id.*

Further, negligence, in general, is not actionable under 42 U.S.C. § 1983. *See Daniels v. Williams,* 474 U.S. 327, 328-36 & n. 3 (1986). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983.[5] *Estelle v. Gamble*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee a prisoner the treatment of his choice. *Jackson v. Fair*, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D.Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. *See Smart v. Villar*, 547 F. 2d 112 (10th Cir. 1976); *Lamb v. Maschner*, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not

---

[5] Any claims for "negligence" against Nurse Boatwright would be classified as medical malpractice asserted pursuant to state law. However, as discussed below, Plaintiff has clarified that he does not wish to assert any state law claims.

9

subject to judicial review in a § 1983 action. *Russell v. Sheffer*, 528 F. 2d 318, 319 (4th Cir. 1975).

In the case of E*stelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain." *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976)). The Court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met…We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

*Estelle*, 429 U.S. at 103-105 (citations and footnotes omitted).

Here, the Magistrate Judge concluded that "Plaintiff has failed to show that he was denied medical treatment by Nurse Boatwright." (ECF No. 123, p. 13). Plaintiff asserts a litany of "objections" to the Report, but they each amount to a disagreement with the Magistrate Judge's reasoning supported by a mere rehashing of arguments previously presented to the court. (ECF No. 134). Essentially, Plaintiff avers that he "is not addressing the issue of giving the Plaintiff medical treatment. The issue is when it was given and the improper amount given." (ECF No. 134, p. 7). Accordingly, the undersigned will conduct a *de novo* review of this portion of the Report in an attempt to address all of Plaintiff's so-called objections.

The Report is correct in stating the Plaintiff may not have received the care he deemed appropriate, but he did receive prompt sufficient treatment. Plaintiff admits that he was promptly escorted to Nurse Boatwright for medical attention approximately 10 minutes after electrocution. Moreover, Nurse Boatwright immediately examined Plaintiff and he was given medication for pain. (*See* ECF No. 105-2, p. 4, "I came to you within minutes of being burned and all you gave me were Tylenol."). Furthermore, Plaintiff was seen again by Nurse Boatwright in less than 48 hours for a follow up visit after continued complaints of pain.[6] From there, Plaintiff was referred to NP Fling and received a series of other medical examinations and treatments by various medical providers. Moreover, Plaintiff notes that "it took three (3) weeks for treatment to begin for burned membranes inside my right ear called fishers. This was because on [Dr. Fling's] initial visit I was too swollen at the right ear to conduct an examination." (ECF No. 105-3, p. 4–5). Accordingly, Plaintiff admits that any discovery of further medical needs was impossible until his second visit with NP Fling, which occurred well after Plaintiff's initial visits with Nurse Boatwright. Thus, it appears Plaintiff merely disagrees with the type of medical treatment provided after his electrocution. However, disagreements as to the preferred type of medical treatment do not give rise to a constitutional claim for deliberate indifference to a serious medical need. *See Smart v. Villar*, 547 F. 2d 112 (10th Cir. 1976).

---

[6] Plaintiff's own records state that he did not show other symptoms, such as blistering, until sometime after this initial visit. (*See* ECF No. 105-2, p. 4, "Hours later I blistered up behind my ear.").

11

Plaintiff's main contention with Nurse Boatwright appears to be his allegations that she falsified records of his medical treatment ordered by NP Fling on February 9, 2018. Plaintiff's only support of this contention is his own self-serving statement that "Nurse Boatwright and the other Defendants interfered with the treatment that Dr. Kendra Fling had ordered, when the non-medical certified MCDC officials were issuing my medication wrong and sometimes skipped me. Defendant Nurse Boatwright falsely signed the Medical Administration Records to hide the negligence." (ECF No. 105-3, p. 5). This treatment consisted of a 10-day regimen of ear drops which took 14 days to administer due to the alleged failure of correctional officers to properly provide the medication. On February 27, 2018, Plaintiff admitted that he had used all of his eardrops and asked Nurse Boatwright, "What's next?" (ECF No. 105-2, p. 34). He was then seen again on March 2, 2018 and referred to an ear, nose, and throat specialist. (ECF No. 105-2, p. 36). Plaintiff then began treatment with that specialist on March 26, 2018. (ECF No. 105-2, p. 38).

Assuming that Plaintiff's statements regarding fraudulent records are true, he has still failed to show a deliberate indifference to a serious medical need. As the Report indicated, "assuming for the sake of argument Plaintiff made a showing of delay in treatment, he fails to show that any alleged delay caused further injury." (ECF No. 123, p. 17). Plaintiff must allege more than a mere delay in treatment to assert a constitutional claim for deliberate indifference. *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988) ("There is no suggestion that the delay in taking him to the hospital exacerbated his injuries in any way; indeed, the doctor who examined him in the emergency room testified that Martin's injuries were minor and did not require either stitches or painkiller. Under these

circumstances, we conclude that the delay in taking Martin to the hospital, even if deliberate, did not amount to a constitutional violation under the *Estelle* standard."); *Kane v. Hargis*, 987 F.2d 1005, 1009 (4th Cir. 1993) (holding that alleged delays in providing adequate care also do not rise to the level of deliberate indifference where the delay does not cause further injury); *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)("An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed.").

Here, Plaintiff has failed to show how any delayed treatment, let alone errant recording of that treatment, has caused any further injury. Nor has Plaintiff shown that Nurse Boatwright caused any delay in subsequent medical treatment or hindered his access to other medical professionals and their continued care. Accordingly, Plaintiff has failed to indicate that the negligent administration of medication by unspecified prison officers amounts to a claim for deliberate indifference as to Nurse Boatwright. At most, these claims would amount to negligence[7] or medical malpractice, neither of which are actionable under § 1983. *See Daniels v. Williams,* 474 U.S. 327, 328-36 & n. 3 (1986); *Estelle*, 429 U.S. at 106.

As to Plaintiff's claims about not receiving an MRI[8], Plaintiff has again failed to provide support for a constructional claim against Nurse Boatwright. Plaintiff's records

---

[7] Plaintiff admits as must as he alleges "Nurse Boatwright was negligent because she interfered with medical treatment Dr. Fling [] ordered." (ECF No. 64, p. 8).
[8] Plaintiff alleges that not receiving an MRI is "the primary issue in Plaintiff's complaint, but not the only issue." (ECF No. 113, p. 3).

and arguments show that Nurse Boatwright did not have the authority to order an MRI and did not refuse Plaintiff's MRI. Plaintiff specifically states that "Plaintiff never told Dr. Fling he did not want a MRI performed, in fact he was never given that option. Defendant Page, the director of Marion Co. Detention Center made the decision." (ECF No. 113, p. 3). This contention is also supported by Fling's affidavit in which she avers that Boatwright does not have the authority to order prisoner transport or authorize payments for MRI testing. (ECF No. 92-1, p. 4). Accordingly, Boatwright was in no way responsible for any alleged refusal to provide Plaintiff MRI testing. Thus, any claim against Nurse Boatwright for deliberate indifference must fail.

Accordingly, Plaintiff's objections have failed to show any error in the Report and therefore the Magistrate Judge was correct in concluding that "[b]ased on the documents before the court, Plaintiff received medical care from Nurse Boatwright even though it may not have been the medical care he so desired." (ECF No. 123, p. 16). Accordingly, the Report is adopted and Nurse Boatwright's motion for summary judgement as to the claims for medical indifference is granted.

### B. Qualified Immunity

Based on the above finding that Nurse Boatwright did not violate Plaintiff's constitutional rights, the Magistrate Judge also held that Boatwright was likewise entitled to qualified immunity. However, this determination is moot in light of the forgoing dismissal of Plaintiff's sole §1983 claim against Boatwright. Accordingly, this Court declines to address qualified immunity.

### C. Medical Malpractice

The Report also concludes that to the extent that Plaintiff's complaint alleges negligent medical treatment, such a claim would be for medical malpractice under state law. The Report goes on to state that any such claim here would fail for failure to comply with statutory prerequisites.

However, Plaintiff appears to concede that he is not asserting any claims arising under state law. Indeed, he states that he is "not suing in state court in a tort, and have no desire to do so." (ECF No. 105, p. 21). "This is a § 1983 civil suit in the U.S. District Court." *Id.* Additionally, he states that "the Plaintiff complaint has been excepted for federal jurisdiction because the Plaintiff's substantive due process right has been violated and because of this constitutional violation by the Defendants, the Plaintiff is entitled to forgo state court procedures." *Id.* at 22. Accordingly, it appears Plaintiff has clarified that he is only asserting claims pursuant to §1983 – namely deliberate indifference to a serious medical need in violation of his 14th amendment rights as a pretrial detainee. Consequently, any argument as to the dismissal of any related or pendant state law claims is moot.

### D. Interference with Grievance Procedure

Although raised in Nurse Boatwright's motion for summary judgment, the Report is silent as to her argument that any claims regarding a specific grievance procedure must also be dismissed. Although it appears that these allegations, if any, were only directed to the other named defendants, to the extent that they can be construed to state a claim against

Nurse Boatwright, they fail as there is no constitutional right to participate in grievance proceedings. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).

### E. Motion to Strike

The Magistrate Judge recommended that Defendant's motion to strike the sur-reply be deemed moot. Based on the above dismissal of all claims against Nurse Boatwright, this court agrees. Accordingly, this motion (ECF No. 114) is dismissed as moot.

### IV. CONCLUSION

After carefully reviewing the applicable laws, the record in this case, the Report and Recommendation, and the objections thereto, this Court finds the Magistrate Judge's recommendation fairly and accurately summarizes the facts and applies the correct principles of law. Accordingly, the Court adopts the Report (ECF No. 123) in all regards. Thus, Defendant's motion for summary judgment (ECF No. 92) is granted as to all of Plaintiff's causes of action against Nurse Boatwright.

IT IS SO ORDERED.

*[Signature: Joseph F. Anderson, Jr.]*

March 23, 2020  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge